**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
Case No. 3:12-cv-491-TJC-TEM**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) )<br>) |
| **Plaintiff,** | ) |
| **v.** | )<br>) |
| **JACKSONVILLE ASSOCIATION OF FIREFIGHTERS, LOCAL 122, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,** | )<br>)<br>)<br>) |
| **Defendant.** | )<br>) |

---

### Plaintiff's Partial Response In Opposition to Defendant's Motion to Dismiss

Plaintiff, United States Equal Employment Opportunity Commission ("EEOC"), hereby submits its Partial Response in Opposition to the Motion to Dismiss of Defendant Jacksonville Association of Firefighters, Local 122, International Association of Firefighters (the "Union").[1]  For the reasons set forth below, the Union's Motion to Dismiss should be denied.

### I.  Introduction

On April 30, 2012, EEOC filed the present lawsuit against the Union, alleging that the Union violated Title VII by advocating for, and negotiating in favor of, a discriminatory promotional process for firefighters in the Jacksonville Fire and Rescue Department

---

[1] In accordance with the Court's Order dated July 13, 2012, DE # 18, EEOC's Partial Response in Opposition to Defendant's Motion to Dismiss does not address the Union's argument that EEOC failed to engage in good faith conciliation.  At the appropriate time, EEOC will demonstrate, however, that EEOC engaged in good faith conciliation with the Union through multiple telephone conferences, written correspondence, and in-person meetings over a period of 31 months.

("JFRD") through, for example, its collective bargaining negotiations with the Consolidated City of Jacksonville (the "City"). Thereafter, on June 26, 2012, the Union moved to dismiss EEOC's Complaint for failure to join the City as a required party under Rule 19 and for failure to state a claim under Rule 12(b)(6).

*First*, dismissal is not warranted under Rule 19 as the Court can order joinder of the City as a required party under Rule 19(a)(2). Alternatively, in light of the strong judicial preference against dismissal under Rule 19(b), the Court could and should consolidate this action with *United States v. Consolidated City of Jacksonville*, No. 12-cv-00451-TJC-MCR (the "DOJ Action"), which will eliminate any potential prejudice to the parties, while serving the purposes of Title VII by ensuring that EEOC has an available avenue of relief against the Union.

*Second*, EEOC properly stated a Title VII claim against the Union. Notably, Title VII imposes liability on Unions that negotiate discriminatory provisions in a collective bargaining agreement. Moreover, EEOC pled sufficient facts to state a plausible claim.

## II.     Factual Background

The allegations in the Complaint, accepted as true and construed in the light most favorable to EEOC, are as follows:

### A.     Historical Background

The JFRD has a history of racial tensions relating back to at least 1971, when a lawsuit was filed against the City alleging hiring discrimination (*Coffey v. Brady*, Case No. 09-mc-00022). *See* DE #1, Compl. ¶ 7. At that time, the court approved and ordered a stipulated consent decree, which required the City to begin hiring black firefighters. *Id.*

2

Following entry of the *Coffey* Consent Decree, the City did hire black firefighters, at least for a period of time. *See, e.g.,* Compl. ¶ 10. In fact, in 1987, there were approximately 91 black firefighters eligible to take a promotional examination for the position of Lieutenant—80 black Privates, and 11 black Engineers. *Id.* Regrettably, however, the Union requested that the City change the promotional line of succession, so that only Engineers could be promoted to Lieutenant, thereby reducing the number of black candidates eligible to take the examination from 91 to 11. *Id.* ¶¶ 9-10.

The City's Director of Public Safety, however, raised concerns about a potential "[a]dverse impact on blacks [and] adverse impact on the Rescue Division." *Id.* ¶ 10. Likewise, the City's Office of Equal Opportunity responded stating:

> Per your request this office's response to the question of the I.A.F.F. proposal for revising the specification for Fire Lieutenant is an <u>absolute no</u>! . . . Reducing the eligible Blacks from 9[1] to 11 would be an injustice.

*Id.* Notwithstanding the City's unequivocal response, and the potential disparate impact on black firefighters, in November 1991, the Union used the collective bargaining process to successfully push for the addition of the Engineer position into the line of succession for promotion, thereby limiting the promotional opportunities for black firefighters. *Id.* ¶ 12.

Unfortunately, the racial tensions at the JFRD escalated. *See id.* ¶¶ 13-18. On February 17, 2006, several nooses were found in the bunker gear of two black firefighters at Station 4 in Jacksonville, Florida. *Id.* ¶ 13. Thereafter, at the request of the City Mayor, the Jacksonville Human Rights Commission conducted a comprehensive investigation of the JFRD, and came to the conclusion that "Far too many instances of unfair or alleged discriminatory treatment grounded upon racial, ethnic, and gender-based differences and

3

disparities, and upon union affiliation or non-affiliation, occur and reoccur to be considered merely isolated incidents." *Id.* ¶ 15. Further, "clear racial differences exist in attitudes and opinions on questions of fundamental fairness in . . . promotion . . . and there is acknowledgement from individuals interviewed that there is some level of racism." As such, the Human Rights Commission recommended, among other changes, that the JFRD should implement an Assessment Center,[2] and change its promotional process to include not only a written exam, but an oral exam and behavior interviews and exercises. *Id.* ¶ 17.

## B.       The Current Promotional Process

The current promotional process for the promotion of firefighters in the City is set forth in collective bargaining agreements ("CBAs") entered into between the City and the Union. Compl. ¶ 20. The CBAs provide for written promotional examinations that are administered on a pass/fail basis, with the pass point set at 70%. *Id.* ¶¶ 24-25. Those candidates that pass the written examinations are then given a numerical score based on the examination results, with applicable seniority and veteran preference points added. *Id.* ¶ 26. The resulting numerical score is then used to rank order the candidates for a given rank (i.e. Lieutenant) within a department (i.e. Suppression), with the person attaining the highest score ranked first. *Id.* ¶¶ 26-27. When vacancies occur, candidates are selected in strict rank order as their names appear on the eligibility lists (i.e. the "Rule of One"). *Id.* ¶ 28. Regrettably, the promotional process described above has had a disparate impact on black candidates for promotion to the ranks of Engineer, Lieutenant (Suppression), Captain

---

[2] An Assessment Center is a process used in the selection of individuals for a job or promotion in an organization. In the context of promotions for firefighters, assessment centers commonly include interview questions, oral presentations, role play, video scenario questions, writing samples, and/or written tests. *See* Ergometrics, http://ergometrics.org/fire.cfm (last visited August 2, 2012).

(Suppression) and District Chief (Suppression).  *Id.* ¶¶ 29-30.  These results were well known to the Union, as the passing candidates were ranked and placed on eligibility lists, and the promotions were carried out in accordance with the eligibility lists.  *See id.* ¶¶ 27-28.  Thus, for example, with respect to the Engineer position, the following written examinations resulted in a disparate impact on black test takers: May 5, 2005, May 19, 2008, and June 30, 2011.  *Id.* ¶¶ 31-51.  These examinations resulted in the promotion of two hundred and thirty four (234) white candidates, and only twelve (12) black candidates, to the position of Engineer over a six year period.  *Id.* ¶¶ 32-34.[3]

Although the Union is the sole collective bargaining representative for all firefighters employed by the City—white and black—the Union has advocated for and negotiated in favor of the above-described promotional process through collective bargaining since at least 2004. *Id.* ¶¶ 4, 19, 82.  Notably, the relevant CBAs negotiated by the Union cover the following time periods: (1) October 1, 2003 through September 30, 2005; (2) October 1, 2005 through September 30, 2008; (3) October 1, 2008 through September 30, 2009; and (4) October 1, 2009 through September 30, 2012.  *Id.* ¶ 20.

Unfortunately, despite the disparate impact described above, the Union has continued its advocacy of the City's promotional process.  In fact, the Union has received a written request by black firefighters to change the promotional process, as well as numerous Charges of Discrimination challenging the promotional process, but has repeatedly failed and refused

---

[3] Similarly, with respect to the Lieutenant (Suppression) position, the August 26, 2004, May 31, 2007, and April 15, 2011 written examinations resulted in the promotion of eighty six (86) white candidates, and only seven (7) black candidates.  *See id.* ¶¶ 52-64.  With respect to the Captain (Suppression) position, the August 27, 2004, and December 11, 2008, written examinations resulted in the promotion of forty seven (47) white candidates, and only one (1) black candidate.  *See id.* ¶¶ 65-73.  Finally, with respect to District Chief (Suppression) written examinations in 2006 and 2009, sixteen (16) white individuals were promoted and zero (0) black candidates were promoted.  *See id.* ¶¶ 74-80.

to remedy, or even attempt to remedy, this discriminatory situation. *Id.* ¶ 83. Indeed, the Union also ignored the Human Rights Commission Report, which recommended specific changes to the promotional process, including the implementation of an Assessment Center. *Id.* ¶ 17, 83. Additionally, even after EEOC Commissioner Stuart J. Ishimaru filed a charge of discrimination against the Union on February 7, 2008, *id.* ¶ 6, the Union entered into two additional CBAs with the City that adopted the same promotional process. *Id.* ¶¶ 20, 83.

### C.     EEOC's Claims Against the Union

EEOC filed the present action against the Union on April 30, 2012. *See* Compl. EEOC is suing the Union under Title VII, which provides:

> It shall be an unlawful employment practice for a labor organization . . . to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c)(3). More specifically, EEOC alleges that the Union is liable, in its own right, for its intentional conduct under Title VII, as it advocated for, and negotiated in favor of, a discriminatory promotional process through, for example, its collective bargaining negotiations with the City. *See* Compl. ¶¶ 19-20, 81-84.

In turn, EEOC is asking the Court for injunctive relief in the form of an order that prohibits the Union from advocating for inclusion in the next CBA a promotional process that: (1) includes the Engineer position in the promotional line of succession; (2) utilizes written examinations as a pass/fail screen; and (3) utilizes written examinations to rank-order candidates. *Id.* ¶ 88. Notably, EEOC is not asking the Union to change the promotional process. Rather, EEOC requests that the Court issue an Order requiring the Union, in its role as the sole collective bargaining representative for firefighters, to stop advocating and/or

negotiating in favor of this promotional process.  *Id.*  In addition, EEOC is not seeking back pay from the Union; rather, EEOC is seeking compensatory and punitive damages against the Union for its intentional conduct under Title VII.  *Id.* ¶¶ 91-92.

EEOC did not name the City as a defendant in its Complaint.  *See id.*  Moreover, EEOC is neither seeking injunctive relief nor monetary damages from the City.  *Id.* Rather, as described above, EEOC is seeking relief from the Union only for its intentional conduct in advocating and/or negotiating in favor of the current promotional process.  *Id.*

**D.      The United States' Claims Against the City**

On April 23, 2012, the United States of America (the "United States") filed a Complaint against the City and the Union alleging that the City's use of written promotional examinations on a pass/fail basis, as well as on a rank order basis, has a disparate impact on black candidates, is not job related and consistent with business necessity, and does not otherwise meet the requirements of Title VII.  *See* DOJ Action, Compl. ¶ 1.  The United States sued the Union as a necessary party under Rule 19(a), but the Complaint does not include any factual allegations as to the Union, and the United States is not seeking any injunctive relief or monetary damages from the Union.[4]  *See id.* at pgs. 14-15. Instead, the United States seeks injunctive relief from the City in the form of changes to the promotional process, and "make whole" relief from the City in the form of promotions, back pay, and retroactive seniority.  *See id.*  The United States is not seeking any compensatory or punitive damages from either the City or the Union.  *Id.*

---

[4] While the City, in its response to EEOC's Motion to Consolidate, *see* DOJ Action, DE #26, suggests that the United States is seeking injunctive relief against the Union, the DOJ Complaint does not specifically seek an injunction against the Union or allege that the Union acted "in active concert or participation" with the City.  As such, it is unclear whether the United States will obtain injunctive relief over the Union.

### III.    Dismissal Is Not Warranted Under Fed. R. Civ. P. 12(b)(7) for Failure to Join An Indispensible Party.

The Union first seeks dismissal of EEOC's Complaint under Fed. R. Civ. P. 12(b)(7) because EEOC did not sue an alleged required party—the City.  *See* Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19(a), (b).  According to the Union, the City is a required party that cannot be joined to this action, which thus necessitates the dismissal of EEOC's lawsuit.  As set forth below, however, the Union's position is without merit because, even assuming the City is a required party, the City could be joined by the Court, or alternatively, the Court could consolidate this action with the DOJ Action, which would eliminate any potential prejudice to the parties and further the remedial purposes of Title VII by providing EEOC with an avenue of relief against the Union.

### A.    Rule 19 Framework

Federal Rule of Civil Procedure 19 sets forth a three-part analysis for determining whether dismissal of EEOC's lawsuit is appropriate under Fed. R. Civ. P. 12(b)(7).  *See* Fed. R. Civ. P. 19(a)(1), 19(a)(2), 19(b).  First, the Court must determine whether the "person" in question—the City—should be joined.  *See* Fed. R. Civ. P. 19(a)(1); *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999).  Thereafter, the Court must determine if joinder of the City is feasible.  *See* Fed. R. Civ. P. 19(a)(2).  Finally, even if the City cannot be joined, the Court must determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In general, the "courts are loathe to grant motions to dismiss of this type," and as such, "dismissal is warranted only when the defect cannot be cured."  *Microsoft Corp. v. Cietdirect.com LLC*, No. 08-60668-CIV, 2008 WL 3162535, *5 (S.D. Fla. Aug. 6, 2008)

(citations and quotations omitted); *see also Owens-Ill., Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999) (citations omitted) ("[D]ismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result.").

> **B.     The Court Can Order Joinder Under Rule 19(a)(2).**

For purposes of this motion only, EEOC will assume that the City is a necessary party under Fed. R. Civ. P. 19(a)(1)(B)(i). Nevertheless, EEOC maintains that dismissal is not warranted as the City can be joined as a Rule 19 party to this lawsuit.

Fed. R. Civ. P. 19(a) provides that joinder of a party is feasible if the absent person "is subject to service of process" and joinder "will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (absent party could be joined under Rule 19 where the Court had federal question jurisdiction and the party was subject to personal jurisdiction). Here, the City is subject to service of process and personal jurisdiction, as evidenced by the DOJ Action currently pending before this Court. Further, joinder of the City will not deprive the Court of subject-matter jurisdiction, as the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Fed. R. Civ. P. 19(a)(1). As such, the City can be joined as a party pursuant to Fed. R. Civ. P. 19(a)(2).

The Union's argument that the City cannot be joined as a party is based not on the text of Rule 19, but solely on the fact that EEOC does not have statutory authority to sue a state or local government. *See* 42 U.S.C. § 2000e-5(f)(1). The Union is correct that EEOC cannot sue the City for purposes of seeking affirmative relief. *Id.* As set forth in *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005), however, "a plaintiff's

inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19." Indeed, in *Peabody*, the Ninth Circuit determined that, although EEOC did not have statutory authority to seek affirmative relief against the Navajo Nation, and although the Navajo Nation was a required party, dismissal was not warranted. *Id.* at 780-83. Instead, the Court held that EEOC could sue the Navajo Nation for the sole purpose of effecting complete relief between the parties. *Id.* at 781-83.[5]

Here, EEOC has sued the Union for its intentional conduct in advocating in favor of a racially discriminatory promotional process contained in CBAs between the Union and City. Although the lawsuit will require, per *Howard,* a determination as to whether the City's promotional process has an unlawful disparate impact on black firefighters, EEOC is not seeking any affirmative relief from the City, either in the form of injunctive relief or monetary damages. As such, EEOC respectfully maintains that joinder is feasible under Rule 19(a)(2), and consequently, the Court should deny the Union's Motion to Dismiss.[6]

### C.    The Court Should Consolidate This Action with the DOJ Action.

Assuming, *arguendo*, that the Court could not order joinder of the City, dismissal is still not warranted because any possible prejudice to the Union and the City can be obviated

---

[5] *See also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) (finding no cause of action against defendant union, but directing union, under Rule 19, "to remain in the litigation as a defendant so that full relief could be awarded"); *EEOC v. Unión Independiente de la Autoridad de Acueductos,* 279 F.3d 49, 52 (1st Cir.2002) (noting EEOC's lawsuit against Union named a Puerto Rican governmental employer as a Rule 19 defendant to ensure complete relief was available); *but see EEOC v. Am. Fed'n of Teachers, Local No. 571, 761 F. Supp. 536 (N.D. Ill., 1991) (ordering dismissal of governmental entity where United States declined to file lawsuit ).

[6] Alternatively, joinder could also be accomplished by ordering the Union to add the City as a party. *See, e.g., Abel v. Brayton Flying Serv., Inc.*, 248 F.2d 713, 716 (5th Cir. 1957) (alleged indispensable party "could have been made a cross defendant without depriving the district court of jurisdiction"); *Gauss v. Kirk*, 198 F.2d 83, 86 (D.C. Cir. 1952) (noting that defendant failed to "avoid the risk of double liability by seeking to interplead the [alleged indispensable] parties").

by consolidation of this action with the DOJ Action.  As set forth in Fed. R. Civ. P. 19(b), where a required party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  In making this determination, the Court should consider the following factors:

(1)     the extent to which a judgment rendered in the City's absence might prejudice the City;
(2)     the extent to which any prejudice could be lessened or avoided;
(3)     whether a judgment rendered in the City's absence would be adequate; and
(4)     whether EEOC (and the black firefighters it has filed suit on behalf of) would have an adequate remedy against the Union if the action were dismissed.

*See* Fed. R. Civ. P. 19(b).  Notably, this is a pragmatic analysis, and where, as here, "it is possible to resolve the dispute without adversely affecting the interests of the absent parties, the district court should not dismiss the case." *Fernandes v. Limmer*, 663 F.2d 619, 693 (5th Cir. 1981); *see also In re Ginn-La St. Lucie Ltd., LLLP*, 420 B.R. 598, (S.D. Fla. Bkrtcy. 2009) ("The philosophy of Rule 19 is to avoid dismissal whenever possible.").

With respect to the first two factors discussed above, EEOC respectfully maintains that consolidation of this action with the DOJ Action will entirely eliminate any purported prejudice to the City and the Union.  Indeed, as set forth in EEOC's Motion to Consolidate, *see* DE # 19, this lawsuit and the DOJ Action involve identical allegations as to the disparate impact of the City's promotional process.  *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274075 (11th Cir. 2000) (setting forth the disparate impact framework).  Given the presence of this identical factual and legal determination, EEOC respectfully maintains that consolidation— for purposes of discovery and a single ruling on the disparate impact issue—will  eliminate any concern about the City's ability to represent its interests and remove the possibility of inconsistent rulings.  *See Evert v. Finn*, No. Civ. A. 98-3293,  2000 WL 135847, *7  (E.D. La.

Feb. 4, 2000) (denying Rule 19 motion to dismiss because absent defendant was a party in a consolidated case, and thus there was "little threat of prejudice to any party"); *United Props. Inc. v. The March Co., Inc.*, No. 89-2322-0, 1989 WL 134479, *1 (D. Kan. Oct. 2, 1989) (denying Rule 19 motion to dismiss and granting motion to consolidate where two lawsuits involve "essentially the same allegations and seek[ ] the same recovery").[7]

Turning to the third factor, a judgment rendered in the City's absence will be "adequate" if the two actions are consolidated, as the disparate impact determination will be fully resolved at one time. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968) ("We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate' to refer to this public stake in settling disputes by wholes, whenever possible . . . ."). Further, while the City suggests that consolidation will cause confusion or delay, the Court has discretion to limit the scope of consolidation and/or to establish an appropriate and convenient trial schedule for the two lawsuits at the appropriate time. As such, this factor similarly weighs against dismissal.[8]

With respect to the final factor, EEOC—and the black firefighters on whose behalf it has filed suit—will not have any remedy against the Union if the Court dismisses EEOC's Complaint. While the Union suggests that EEOC's lawsuit is duplicative of the DOJ Action,

---

[7] In addition, the City could also protect its own interests by intervening. *See, e.g., McComb v. McCormack,* 159 F.2d 219, 222-23 (5th Cir. 1947) (noting that alleged indispensable parties intervened with permission of the Court); *Nash v. Consolidated City of Jacksonville*, 895 F. Supp. 1536, 1538 (M.D. Fla. 1995) (noting that the Union was allowed to intervene in case challenging promotional process).

[8] While the Union insists that no judgment in the City's absence could be adequate, the Complaint is very clear that EEOC is not asking the Union to change the promotional process. Rather, EEOC is only asking that the Union be prohibited from advocating and/or negotiating in favor of certain aspects of the promotional process. Further, even if EEOC could not obtain effective *injunctive* relief against the Union, EEOC could still recover monetary damages, and thus dismissal is inappropriate. *See Jota v. Texaco, Inc.*, 157 F.3d 153, 162 (2d Cir. 1998) (noting that although plaintiff could not obtain full equitable relief without absent party, dismissal was error because "much of the relief sought could be fully provided" by present defendant).

this assertion is false.   EEOC's claims against the Union are directed to the Union's intentional conduct in negotiating in favor of a discriminatory promotional process.   The Union's actions are not addressed, at all, in the United States' Complaint.   Moreover, the Union conveniently neglects to point out that the United States did not specifically name the Union in its request for injunctive relief, and unequivocally is not seeking any monetary damages against the Union.   As such, if the Court dismisses this action, EEOC will have no recourse against the Union for its intentional discrimination under Title VII.[9]

Finally, EEOC must reaffirm that it is not seeking any affirmative relief, including injunctive relief or monetary damages, against the City.   As such, EEOC is not attempting to circumvent Title VII, or otherwise prosecute a case against the City.   *See, e.g., EEOC v. Oak Park Teachers' Ass'n*, No. 85 C 8158, 1985 WL 5220 (N.D. Ill. Dec. 31, 1985) (dismissing EEOC's lawsuit against union and school board, but noting that EEOC could intervene in plaintiff's separate lawsuit against same parties).   Notably, EEOC does have statutory authority, however, to sue both public and private unions. 42 U.S.C. § 2000e-2(c)(3).   Thus, dismissal of EEOC's Complaint is unjustified in view of the practical solution of consolidation.   As the Supreme Court stated in *Bourdieu v. Pacific Western Oil Co.*, 299 U.S. 65, 71 (1936), "[t]he rule is that if the merits of the cause may be determined without prejudice to

---

[9] The Union suggested, in the failure to conciliate portion of its Motion to Dismiss, that it is not subject to any compensatory or punitive damages under 42 U.S.C. § 1981a(3) because it has less than 15 employees.   While EEOC will address this argument more fully when responding to the Union's failure to conciliate argument, it is important to note that 42 U.S.C. § 1981a(3) (statutory caps) is silent as to the damages available against a Union with less than 15 employees.   As such, EEOC has interpreted this section to mean that "all covered employment agencies and labor organizations with 100 or fewer employees are subject to the $50,000 cap on damages."  *See* Enforcement Guidance: Compensatory and Punitive Damages Available Under § 102 of the Civil Rights Act of 1991 (attached as Exhibit 1); *Dowd v. United Steelworkers of Am., Local 286*, 253 F.3d 1093 (8th Cir. 2001) (holding that Union with less than 15 employees was subject to compensatory damages); *Booth v. Pasco County, Fla.*, No. 09-cv-2621, Motion for Judgment Notwithstanding the Verdict, New Trial, or for Remittitur, DE 229 at pg. 19 (Int'l Assn. of Firefighters Local 4420 arguing that Union with zero employees was subject to $50,000 statutory cap) (attached as Exhibit 2).

the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result."

## IV. Dismissal Is Not Warranted Under Fed. R. Civ. P. 12(b)(6).

The Union next suggests that dismissal is warranted under Fed. R. Civ. P. 12(b)(6). EEOC understands the Union's arguments to suggest that: (1) EEOC's theory of liability is unsound as Title VII does not impose any affirmative obligations on Unions; (2) EEOC pled insufficient facts sufficient state a plausible claim for relief; and (3) the court's prior decision in *Nash* absolves the Union from liability. As set forth below, however, the Union's position as to each argument is unavailing.

### A. Title VII Imposes Liability on Unions For Negotiating In Favor of Discriminatory Provisions in a Collective Bargaining Agreement.

EEOC's theory of liability in this matter is based upon the Eleventh Circuit case of *Howard v. International Molders and Allied Workers Union, AFL-CIO-CLC*, 779 F.2d 1546 (11th Cir. 1986). *Howard* involved the use of an employer's mechanical comprehension test as a condition to promotion between 1965 and 1977. *Id.* at 1548. At issue in the case was whether the local Union could be held liable for the employer's use of the tests where the tests had a disparate impact on black test takers. *Id.* Citing *Terrell v. United States Pipe and Foundry Co.*, 644 F.2d 112 (5th Cir., Unit B, 1981), the Eleventh Circuit answered this question in the affirmative. *Id.* at 1553. The Court found that although one union member criticized the test in 1970, "[t]here was no evidence that the union committee ever demanded during the 1972, 1974, or 1977 negotiations that the company cease using the tests." *Id.* at 1548. Accordingly, the Eleventh Circuit held that "the local union violated 42 U.S.C. § 2000e-2(c)(3) because it did not satisfy the *Terrell* standard of

taking every reasonable step to ensure that the employer complies with Title VII," and thus engaged in intentional discrimination.   *Id.* at 1548, 1548 n.19.

As with *Howard*, Federal Circuit Courts of Appeal have routinely held that a union cannot sit back and ignore an employer's discrimination. *See, e.g., Maalik v. Int'l Union of Elevator Constructors*, 437 F.3d 650, 653 (7th Cir. 2006) ("[T]urning a blind eye to members' or employees' discrimination is not reasonable.  Local 2 has tools (from fines to expulsion) and decided not to use them.  . . . Both managers and union officials may prefer the quiet life, but Title VII requires action"). Moreover, the Supreme Court has specifically held that a party may be liable for its role in negotiating discriminatory provisions in a collective bargaining agreement.  *See Ariz. Governing Comm. v. Norris*, 463 U.S. 1073, 1090 (1983) ("[I]t is well established that both parties to a discriminatory contract are liable for any discriminatory provisions the contract contains, regardless of which party initially suggested inclusion of the discriminatory provisions.").[10]  Notably, *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987) is not to the contrary.  In *Goodman*, the Supreme Court declined to address whether mere passivity by a Union could create liability under Title VII, *id.* at 665-66, but held that a union could be liable for its inaction where it refused to file grievances that were racial in nature.  *Id.* at 666.  Here, EEOC is alleging far more than mere passivity

---

[10] *See also Jackson v. Seaboard Cost Line R. Co.*, 678 F.2d 992, 1017 (11th Cir. 1982) (stating that the district court properly held Union liable under Title VII because of the discriminatory provisions contained in a collective bargaining agreement); *Sears v. Bennett*, 645 F.2d 1365, 1375 (10th Cir. 1981) ("A union's role as a party to a collective bargaining agreement may be sufficient to impose back pay liability on the union."); *Dickerson v. U.S. Steel Corp.*, 472 F. Supp. 1304, 1353 (E.D. Pa. 1978) ("A union's failure to negotiate for non-discriminatory contract terms . . . is in itself discrimination, because of the union's duty to protect its minority members."); *Bennett v. Cent. Tel. Co. of Ill.*, 545 F. Supp. 893, 895 (N.D. Ill. 1982)("Unions generally share responsibility for discriminatory effects of collective bargaining agreements they sign.").

by the Union—EEOC has alleged that the Union engaged in intentional discrimination by acquiescing in, and negotiating in favor of, a discriminatory promotional process with respect to at least four identified CBAs. [11]   As such, EEOC's theory of liability is sound.

### B.  EEOC Alleged Sufficient Facts to State a Plausible Cause of Action.

The Union next asserts that EEOC failed to plead sufficient facts to state a plausible cause of action under *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).   In order to state a plausible cause of action under *Howard*, EEOC must allege facts to demonstrate that: (1) the promotional process had a disparate impact on black test takers; and (2) the Union failed to make every reasonable effort to see that those tests were brought to an end.  *See Howard*, 779 F.2d at 1552 ("Once the trial court found that the mechanical aptitude test had, during its entire period of operation, had a disparate impact on the minority class, it follows that it was the duty of the defendant unions under the Terrell standard to make every reasonable effort to see that these tests were brought to an end.").  Here, EEOC has alleged more than sufficient facts to state a plausible *Howard* claim.

Ignoring the allegations in the Complaint, the Union states that "there are absolutely no facts as to the bargaining and factual history related to the promotional process. . . ."  DE #13, Def.'s Mot. to Dismiss at 18.  Contrary to the Union's position, however, EEOC alleged the following with respect to the promotional process:

---

[11] Citing to *Burden v. Int'l Longshoremen's Ass'n, Local 1410,* 510 F. Supp. 2d 618, 623 (S.D. Ala. 2007), the Union states that unions do not have an affirmative duty to remedy an employer's discrimination.  *Burden*, however, is easily distinguishable, as the Court determined, at the summary judgment phase, that the Union could not be held responsible for alleged workplace harassment where the Union "advised the plaintiff to bring her Complaint to CSA's attention, that it promptly provided her with a grievance form, and that it cooperated fully in the employer's ensuing investigation." *Id.* at 624.  Moreover, the *Burden* court acknowledged that a Union can be held responsible for inaction, such as refusing to file a grievance or assert a claim.  *Id.* at 624.

- The Union is the sole collective bargaining representative for firefighters employed by the City.  Compl. ¶ 4.

- Dating back to 1987, the Union has used the collective bargaining process to make changes to the promotional process unfavorable to its black members. *Id.* ¶¶ 8-12.

- The Jacksonville Human Rights Commission, an independent, third party that investigated the JFRD, found that "Clear racial differences exist in attitudes and opinion on questions of fundamental fairness in hiring, *promotion* and discipline; and there is acknowledgement from individuals interviewed that there is some level of racism in the department." [12] *Id.* ¶ 16 (emphasis added).

- The Jacksonville Human Rights Commission recommended that the JFRD implement an assessment center, as similarly dome in the Jacksonville Sheriff's Office, as part of the promotional process.  *Id.* ¶ 17.

- On at least one occasion, the Union received a written request by black firefighters to change the promotional process.  *Id.* ¶ 83.

- Notwithstanding the Jacksonville Human Rights Commission's recommendations, and the written request by black firefighters, the Union has advocated for and negotiated in favor of the current promotional process each time a CBA was negotiated between 2004 and the present.  The relevant CBAs, negotiated by the Union, were effective October 1, 2003, October 1, 2005, October 1, 2008, and October 1, 2009.  *Id.* ¶¶ 19-20, 82-83.

- The Union has received sworn Charges of Discrimination from black firefighters challenging the promotional process, but has repeatedly failed to raise the interests of its black members in its CBA negotiations.  *Id.* ¶ 83.

- Even after EEOC Commissioner Stuart J. Ishimaru filed a charge of discrimination against the Union on February 7, 2008, *id.* ¶ 6, the Union entered into two additional

---

[12] The Union suggests that the Court must disregard as hearsay EEOC's allegations in the Complaint based upon the Jacksonville Human Rights Commission's Report.  "As counsel must be aware . . . [however], the Court must accept as true all factual statements alleged in the Complaint" and "whether the statements might constitute inadmissible hearsay when relied upon for the truth of the matter asserted is simply irrelevant."  *In re Palermo*, No. 080cv-7421, 2011 WL 446209, *5 (S.D.N.Y. Feb. 7, 2011); *Harrington v. City of Phenix City*, 10-cv-1048, 2012 WL 204168, *3n.5 (M.D. Ala. Jan. 24, 2012) (noting that newspaper article contained hearsay, but stating that "the evidentiary value of the statements is immaterial to the ruling on the motion to dismiss").  Further, the Report falls under the public records exception to the hearsay rule, as it sets out factual findings from a legally authorized investigation.  *See* Fed. R. Evid.  803(8).  Finally, even if the Court did not accept EEOC's allegations for the truth of the matter asserted, the allegations demonstrate, at the very least, that an independent, third party found significant racial problems at JFRD, and recommended significant changes to the promotional process.

CBAs with the City that adopted the same promotional process.  *Id.* ¶¶ 20, 83.

The Union also states that there are "no facts to suggest the existence of any alleged unlawful disparate impact discrimination over the promotional process, to even remotely suggest JAFF, or the City, has a discriminatory standard operating procedure or engaged in intentional discrimination."  *See* DE #13, Def.'s Mot. to Dismiss at 18.  This assertion is simply false, as EEOC challenged specific examinations, alleged that each of the examinations had a disparate impact on black candidates, and provided factual detail as to the number of white and black candidates promoted.  *See* Compl. ¶¶ 29-80   Further, EEOC alleged that the passing candidates were ranked and placed on eligibility lists, and the promotions were carried out in accordance with the eligibility lists.  *See id.* ¶¶ 27-28.  Thus, the results of this process were well known to the Union and noticeable in terms of the lack of black candidates promoted: for example, with respect to the Lieutenant (Suppression) position, eighty six (86) white candidates, and only seven (7) black candidates, were promoted over a six year period.  *See id.* ¶¶ 52-64.

Finally, the Union suggests that EEOC was required, but failed to allege, that a "member requested JAFF to file any grievance or complaint over the promotional process which was refused for discriminatory, or any other reason."  Here, the Union appears to misapprehend the nature of EEOC's Complaint.  EEOC is not alleging that the Union failed to respond or represent its members through the grievance process; rather, EEOC has alleged that the Union is liable for its actions in advocating and/or negotiating in favor of a discriminatory promotional process through, at a minimum, its CBA negotiations.  As set forth above, Title VII imposes liability on Unions for negotiating discriminatory provisions

in a collective bargaining agreement, and on this basis, dismissal is not warranted.

**C.     *Nash* Does Not Shield The Union From Liability.**

The Union also maintains that the district court's decision in *Nash v. Consolidated City of Jacksonville*, 895 F. Supp. 1536 (M.D. Fla. 1995), which upheld a single JFRD examination in 1990, somehow renders the Union immune from future liability.[13]   More specifically, the Union's Motion to Dismiss suggests that this Court should determine, as a matter of law, that because a single 1990 promotional test for fire combat captain was upheld following trial in 1995, the Union cannot be liable under Title VII for its ongoing role in negotiating in favor of a discriminatory promotional process with respect to different positions over two decades later.

In analyzing the Union's *Nash* argument, it is important to look at the *Nash* decision itself.   In *Nash,* the court first held that there was a history of race discrimination at the JFRD.   *Nash*, 895 F. Supp. at 1543 ("The City has a history of discriminating against African–Americans in the Fire Department.").   Nevertheless, the court determined, following trial, that the 1990 fire combat captain examination was job related and consistent with business necessity.   *Id.*   The court's decision, however, was clearly impacted by its disbelief of Nash's expert, as the court noted: "Dr. Shapiro, Plaintiff's expert, stressed how the lieutenant and captain examinations are similar. However, the Court does not believe that Dr. Shapiro ever actually compared the two by looking at the questions and reading them." *Id.* at 1547.   Likewise, the plaintiff failed to produce any reliable evidence as to alternative testing

---

[13] As indicated in *Nash*, Winston F. Nash, an African American male, first filed suit against the City alleging a disparate impact with respect to the City's promotional examination for Lieutenant.  Following two appeals, Mr. Nash was successful as the Eleventh Circuit held, on the record before it, there the lieutenant examination had a disparate impact on black test takers, and was not job related.   *See Nash v. Consolidated City of Jacksonville*, 905 F.2d 355 (11th Cir. 1990) *cert. denied*, 498 U.S. 1089 (1991).

devices. *Id.* at 1553 (noting that no evidence was produced as to alternative testing measures, and that Dr. Shapiro stated that it was not his job to tell the City how to revise the system").

While the Union may cite to *Nash* as part of its defense to the merits of EEOC's lawsuit, the Union's argument does not support dismissal.  Indeed, the Union has not cited, and EEOC has not found, a single case that would suggest that, where a court rules on the merits of a specific promotional examination, such ruling precludes all future liability for an alleged discriminatory promotional process relating to different promotional exams two decades later.  Instead, EEOC respectfully maintains that the parties should be able to put forth their respective positions, at trial, as to why the Union was required, under Title VII, to negotiate in favor of a non-discriminatory promotional process during the collective bargaining process notwithstanding *Nash*. [14]

Finally, although EEOC maintains that the Union's position—that EEOC must plead facts demonstrating that the challenged promotional examinations are different from the examinations in *Nash*—is without merit, EEOC's Complaint does in fact meet this threshold. Specifically, *Nash* makes clear that its holding is limited to the JFRD's 1990 fire combat captain examination, whereas the instant lawsuit involves examinations between 2004 and 2011 for the positions of Engineer, Lieutenant (Suppression), Captain (Suppression), and District Chief (Suppression).

**V.    Conclusion**.

For the forgoing reasons, EEOC requests that this Court deny the Union's Motion to Dismiss.

---

[14] The Union did not, and cannot, argue that EEOC's lawsuit is barred by claim preclusion or issue preclusion. *See Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1332 (11th Cir. 2010)

Respectfully Submitted,

s/Kristen Foslid_____
KRISTEN FOSLID
Trial Attorney
Florida Bar No: 0688681
ROBERT WEISBERG
Regional Attorney
Florida Bar No: 285676
KIMBERLY McCOY-CRUZ
Supervisory Trial Attorney
Florida Bar No: 153729
Equal Employment Opportunity
Commission
Miami District Office
Two South Biscayne Blvd.,
Suite 2700
Miami, Florida 33131
Tel: 305-808-1803
Fax: 305-808-1835
Kristen.Foslid@eeoc.gov

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2012, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is

being served on the Union via transmission of Notices of Electronic Filing generated by

CM/ECF, and on the Third Parties identified on the attached service list via electronic mail.

s/ Kristen Foslid_____
Kristen Foslid

21

## SERVICE LIST

ROBERT WEISBERG
Regional Attorney
KIMBERLY McCOY-CRUZ
Supervisory Trial Attorney
KRISTEN FOSLID
Trial Attorney
Equal Employment Opportunity
Commission
Miami District Office
Two South Biscayne Blvd.,
Suite 2700
Miami, Florida 33131
Tel: 305-808-1803
Fax: 305-808-1835
kristen.foslid@eeoc.gov

***Attorneys for Plaintiff***

PAUL A. DONNELLY
Trial Counsel
JUNG YOON
Counsel
Donnelly & Gross, P.A.
2421 NW 41st Street, Suite A-1
Gainesville, FL 32606
Tel: 352-374-4001
Fax: 352-374-4046
pdonnelly@laborattorneys.org
jyoon@laborattorneys.org

***Attorney for Defendant***

CINDY A. LAQUIDARA
General Counsel
ADINA TEODORESCU
Assistant General Counsel
CRAIG FEISER
Trial Attorney
Office of General Counsel
117 W. Duval Street
Suite 480
Jacksonville, Florida 32202
Tel: 904-630-1728
Fax: 904-630-8287
cindyl@coj.net
Teodores@coj.net
CFeiser@coj.net

***Attorney for Third Party
Consolidated City of Jacksonville***

JAY D. ADELSTEIN
HECTOR RUIZ
Senior Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Patrick Henry Building, Rm 4026
950 Pennsylvania Ave, NW
Washington, DC 20530
Tel: 202-514-3749
Fax: 202-514-1005
Jay.D.Adelstein@usdoj.gov
Hector.Ruiz@usdoj.gov

***Attorneys for Third Party United States***